IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAM C. TAMBORELLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:24-cv-1356-E-BN |
| | § | |
| TOWN OF HIGHLAND PARK, | § | |
| TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Sam C. Tamborello filed a *pro se* complaint against Defendant Town of Highland Park, Texas ("HP"), a Texas municipality, its current and former city managers, and several of its police officers, alleging that Defendants violated his constitutional rights, federal statutes, and Texas law. *See* Dkt. No. 3.

United States District Judge Ada Brown referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 7. Tamborello responded. *See* Dkt. Nos. 9 & 10. Defendants replied. *See* Dkt. No. 11. And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion to dismiss and dismiss this lawsuit with prejudice.

**Applicable Background**

Tamborello, an HP resident, first asserts violations of the Americans with

Disabilities Act ("ADA") based on how HP and its employees "chose to treat [him]," "on a belief that [he] somehow was different [than] any other person simply because he complains and/or complained to and about the police, and Defendants, etc." Dkt. No. 3 at 11 (further alleging that "[i]t was known by the police and defendants that [he] suffered from PTSD and other severe health issues").

As for the claims founded on the United States Constitution, and thus actionable under 42 U.S.C. § 1983, Tamborello first alleges violations of the First Amendment based on Defendants' alleged abuse of power and because Tamborello speaks out against a community organization that he claims, "in effect[,] employs [Defendants], uses them, and award them monies and favors." *Id.* at 12-13; *see also id.* at 13-15 (asserting a separate count for "Abuse of Power" that invokes Section 1983 but also could be construed as a state law tort claim).

Tamborello further includes a false arrest claim, typically construed as a violation of the Fourth Amendment. *See id.* at 15-16. And he alleges that HP failed to supervise its employees, *see id.* at 19, which is not itself a separate constitutional violation, but is a theory of liability against a municipality, which will be discussed in detail below.

And Tamborello includes tort claims under Texas law (for defamation and fraud and, possibly, "abuse of power"). *See id.* at 16-18.

Moving to dismiss, Defendants assert that the ADA claim is not plausibly alleged; that, as to the Section 1983 claims, the claim against HP is also not plausibly alleged, while the individual defendants are entitled to qualified immunity; that the

state law claims should be dismissed under the Texas Tort Claims Act ("TTCA"); and that the civil lawsuit, in whole, is premature because criminal proceedings related to the same underlying events remain pending against Tamborello. *See generally* Dkt. Nos. 7 & 11.

And, for the reasons set out below, the Court should grant the motion and dismiss this lawsuit with prejudice.

## Legal Standards

Considering a motion under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

While Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

And, so, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

Accordingly, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Brown v. Tarrant Cnty.*,

*Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." (cleaned up)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)).

And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377

(5th Cir. 2004) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. That is because "a claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10

(D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## Discussion

### I. The Court need not stay this civil case because of related state criminal proceedings.

Defendants re-urge in their August 2024 reply (the last filing in this case) that this lawsuit is "premature as Plaintiff's criminal cases related to this instant action [were, at that time at least,] pending in Dallas County," Dkt. No. 11 at 3.

And a pending criminal proceeding that is related to civil allegations would usually implicate the principles underlying *Younger v. Harris*, 401 U.S. 37 (1971).

That is because, while Section 1983 exemplifies "an express authorization from Congress permitting federal courts to enjoin state proceedings in order to protect federal rights," *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (citing *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972)), this provision of federal law "does not 'qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding,'" *id.* (quoting *Mitchum*, 407 U.S. at 243; citing *Younger*, 401 U.S. at 43-47).

So, under *Younger*, a federal court should generally abstain from exercising its jurisdiction where to do so would interfere with certain, select state proceedings, chiefly ongoing state criminal proceedings.

But *Younger* abstention "applies only where there is 'no question that [a complaint] allege[s] injuries under federal law sufficient to justify the District Court's

retention of jurisdiction.'" *Boyd v. Farrin*, 575 F. App'x 517, 519-20 (5th Cir. 2014) (per curiam) (quoting *Deakins v. Monaghan*, 484 U.S. 193, 204 (1988); citing *Marts v. Hines*, 68 F.3d 134, 135 & n.5 (5th Cir. 1995); citation omitted).

And the United States Court of Appeals for the Fifth Circuit has "interpreted this limitation to mean that a stay is not required where the district court determines that the claim for damages is frivolous under 28 U.S.C. § 1915." *Id.* at 520 (collecting cases).

Similarly, because the undersigned finds that the claims here should be dismissed with prejudice, for the reasons explained below, the Court need not stay and retain this case.

## II. The Court should dismiss the ADA claim because Tamborello fails to plead facts that raise a right to relief above a speculative level.

"The ADA is a broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals and to integrate them into the economic and social mainstream of American life." *Clark v. Dep't of Pub. Safety*, 63 F.4th 466, 470 (5th Cir. 2023) (per curiam) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011)).

> The focus of Title II of the ADA is the provision of public services. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding. Section 504 provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

*Id.*

To plausibly allege a Title II violation, Tamborello must provide factual content to show – or from which the Court may infer –

> "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability."

*Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017) (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)).

In the complaint, Tamborello alleges that he suffers from "PTSD and other severe health issues," and he adds in his amended response to the motion to dismiss that he has end-stage kidney failure.

But, even if the Court considers all these medical conditions, Tamborello still has not alleged facts that could support a plausible claim under the ADA – facts from which the Court may infer "that he was treated differently because of his disability." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *see, e.g.*, *Luke v. Texas*, 46 F.4th 301, 305 (5th Cir. 2022) ("Luke can show that he was discriminated against because of his disability as both Lee County and the Supervision Departments knew he was deaf yet failed to provide an accommodation despite multiple requests for an interpreter." (citing *Windham*, 875 F.3d at 235)).

## III. The Court should dismiss the Section 1983 claims against HP and the individual defendants in their official capacities because Tamborello fails to plead facts that raise a right to relief above a speculative level.

To start, to the extent that Tamborello has sued the individual defendants in

their official and individual capacities, "[t]he performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478, 485 (5th Cir. 2000).

And, where "'a defendant government official is sued in his individual and official capacity, and the city or state is also sued,' the 'official-capacity claims and the claims against the governmental entity essentially merge.'" *Harmon v. Dall. Cnty., Tex.*, 927 F.3d 884, 891 (5th Cir. 2019) (quoting *Turner*, 229 F.3d at 485).

And, so, the standards applicable to pleading municipal liability apply to an official-capacity claim. *See, e.g.*, *Byrum v. City of Mesquite*, 126 F. App'x 670, 671 (5th Cir. 2005) (per curiam) ("A governmental entity or municipality, as well as officers thereof acting in their official capacity, can be held liable under § 1983 only if official policy or custom caused the deprivation of a constitutional right." (citations omitted)).

"Municipalities can be held liable for violating a person's constitutional rights under [42 U.S.C.] § 1983." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) ("*Sanchez II*") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

And the general pleading standards set out above apply to a claim against a municipality. *See Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) ("There is no heightened pleading standard for § 1983 claims against municipalities. To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).

But, because "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage,'" *id.* (quoting Section 1983; citing *Monell*, 436 U.S. at 690), a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation," *Sanchez II*, 956 F.3d at 791 (citing *Monell*, 436 U.S. at 694); *see also Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *3 (5th Cir. June 26, 2024) (per curiam) ("A municipality may be held liable for a constitutional violation 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" (quoting *Monell*, 436 U.S. at 694)).

To plausibly allege that a policy was the moving force,

> a plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482.

These elements are "necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

And, where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs." *Brown*, 985 F.3d at 497

& n.11 (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations omitted). And, in rare circumstances, "a single decision by a policymaker may … constitute a policy for which a municipality may be liable," where (1) the "decision was made by a final policymaker, and (2) a plainly obvious consequence of the decision is a constitutional violation." *Doe v. Englewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020) (cleaned up); *see also Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) ("[A]n official policy includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." (cleaned up)).

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority.'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (citation omitted).

A plaintiff must then "allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (citation omitted).

As to the causation required, "[t]his connection must be more than a mere 'but

for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (footnote omitted). That is, the "moving force" is the "catalyst" for the injury in question, not merely a "contributing factor." *Johnson v. Cook Cnty.*, 526 F. App'x 692, 695-96 (7th Cir. 2013) (per curiam).

"[T]he failure to provide proper training [or supervision] may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (citation omitted). And, although "a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal liability claim." *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"The ratification theory provides another way of holding a city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen*, 65 F.4th at 749 (footnote omitted). But "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 849 (citation omitted). This theory is also "limited to 'extreme factual situations,'" such that conduct may be unconstitutional but "not sufficiently extreme to qualify for a finding of ratification." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395-96 (5th Cir. 2017) (citations omitted)).

And, regardless the theory of municipal liability, "[t]o proceed beyond the

pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation … cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and footnote omitted).

That is because "[t]he causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for 'where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (en banc) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997))).

Here, the alleged events underlying the official-capacity and municipal-liability claims all concern Tamborello.

But allegations "limited to the events surrounding the plaintiff" cannot constitute "an allegation of a *de facto* policy … by [a municipality]," *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *accord Hutcheson*, 994 F.3d at 482, because such allegations do "not plausibly allege *any* pattern of conduct – much less a pattern of similar violations," *Johnson*, 83 F.4th at 947 (emphasis in original).

> [Instead, a] plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. That knowledge, coupled with a failure to act, can show the existence of a municipal policy.

*Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 710 (5th Cir. 2023) (cleaned up).

In addition to not alleging an official policy, Tamborello fails to connect an official policy to a policymaker for the City.

A complaint need "not specifically identify [the municipality's] policymaker," *Balle v. Nueces Cnty., Tex.*, 952 F.3d 552, 559 (5th Cir. 2017), because that identity "is a question of state law," and "courts should not grant motions to dismiss § 1983 cases 'for imperfect statement of the legal theory,'" *Groden v. City of Dall., Tex.*, 826 F.3d 280, 284-85 (5th Cir. 2016) (citations omitted).

But, to plausibly allege the policymaker prong of *Monell* liability, a complaint must still contain factual content to allow the Court to reasonably infer "that the challenged policy was promulgated or ratified by the city's policymaker." *Id.* at 285; *see also Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("Because the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the policymaker ... to the allegedly unconstitutional policy." (citing *Groden*, 826 F.3d at 284, 286)).

And, aside from unsupported conclusions, Tamborello's complaint fails to connect the individual defendants' alleged acts to the Town's policymaker.

And, so, because Tamborello fails to plausibly allege the first two prongs of *Monell*, the Court need not take up the third – moving-force causation – prong. *See*

*Brown*, 985 F.3d at 497 & n.11; *Zarnow*, 614 F.3d at 168-69.

And, to the extent that Tamborello sues the former and current city managers in a supervisory capacity, *see* Dkt. No. 3 at 19, "[s]upervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (per curiam) (citation omitted).

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. And "[e]stablishing deliberate indifference generally requires a 'pattern of similar violations' arising from a policy 'so clearly inadequate as to be obviously likely to result in a constitutional violation.'" *Convington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (cleaned up; quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003)).

The facts alleged do not plausibly plead deliberate indifference on the part of either defendant. And, for the reasons set out above, Tamborello also has not alleged a policy – unconstitutional or otherwise – that these defendants could enforce.

**IV.    The Court should dismiss the Section 1983 claims against the individual defendants in their individual capacities because Tamborello fails to plead facts that allow the Court to reasonably infer that any defendant is liable for the harms alleged and that defeat each defendant's qualified immunity defense.**

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up).

"But government officials performing discretionary duties" can respond to such a claim by asserting qualified immunity. *Id.* at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

And, if they do, a court must consider each official's actions separately, *see Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007), on an expedited basis, *see Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021), "because qualified immunity is 'not simply immunity from monetary liability' but also 'immunity from having to stand trial,'" *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018)).

Qualified immunity is a basis to dismiss a lawsuit under Rule 12(b)(6).

And, "[w]here public officials assert qualified immunity in a motion to dismiss, [district courts] must rule on the motion." *Carswell v. Camp*, 54 F.4th 307, 310, 311 (5th Cir. 2022).

But, because a plaintiff "need not anticipate a qualified immunity defense," *Fisher v. Dall. Cnty.*, 299 F.R.D. 527, 532 (N.D. Tex. 2014), the Rule 12(b)(6) standards are "not heightened … [w]hen a plaintiff pleads a § 1983 claim that implicates qualified immunity," *Allen*, 65 F.4th at 744 (citation omitted).

Instead, a plaintiff need only "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Allen*, 65 F.4th at 744 (quoting *Arnold*, 979 F.3d at 267). That is, "a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*."

*Arnold*, 979 F.3d at 267; *accord Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."); *Babinski v. Sosnowsky*, 79 F.4th 515, 519-20 (5th Cir. 2023) ("A plaintiff attempting to overcome qualified immunity at the Rule 12(b)(6) stage must plead facts that allow this court to reasonably infer that the defendant is liable for the harm alleged." (citation omitted).

Or, put another way, because the "qualified-immunity inquiry is two-pronged," *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citing *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)), to survive a motion to dismiss asserting qualified immunity, a plaintiff's pleading must yield a "yes" to two questions:

- Do "the facts, viewed in the light most favorable to the party asserting the injury, [plausibly allege] that the official's conduct violated a constitutional right"? *Id.* at 190-91 (citing *Garcia*, 957 F.3d at 600).

- Was "the right at issue … 'clearly established' at the time of the alleged misconduct"? *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson*, 555 U.S. at 232).

At the pleadings stage, the first question is typically straightforward. *Cf. Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) ("The defense of qualified immunity 'alters the usual summary judgment burden of proof.' Once a defendant properly raises the defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense's protection." (citations omitted)).

But, regardless of when it's considered, the clearly established question can be "a doozy." *Morrow*, 917 F.3d at 874. That is, "[t]he 'clearly established' prong is

difficult to satisfy." *Cunningham*, 983 F.3d at 191; *cf. Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) ("We are bound by the restrictive analysis of 'clearly established' set forth in numerous Supreme Court precedents.").

"In order for a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ramirez*, 3 F.4th at 133 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis." *Id.* at 133-34.

And the plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova*, 994 F.3d at 726 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

"There are two ways to demonstrate clearly established law" and meet this additional burden to make this second showing. *Id.*

Typically, the plaintiff must "'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances was held to have violated the Constitution.'" *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (cleaned up); *accord Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (A clearly established right must be supported by "controlling authority – or a 'robust consensus of [cases of] persuasive authority' – that defines the contours of the right in question

with a high degree of particularity." (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011))); *see, e.g.*, *Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that. As of December 2013, only two circuits had weighed in on the 'contours of the right.' These cases alone do not provide sufficient authority to find that the law was clearly established." (footnote omitted)).

"It is the plaintiff's burden to find a case in her favor that does not define the law at a high level of generality." *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (cleaned up; quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018)). Thus, the "clearly established law" "must be 'particularized' to the facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up). And a clearly established right must be defined "with specificity." *Cunningham*, 983 F.3d at 191 (quoting *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam)).

"The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (citations omitted).

"In other words, 'there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively

unlawful.'" *Cunningham*, 983 F.3d at 191 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

So, in sum, under the most common approach to this prong, while the "clearly established right … must be particularized to the facts of the case establishing the right," *Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 277 (5th Cir. 2022) (cleaned up), because "[t]he touchstone of the inquiry is 'fair notice,'" "[d]istinctions between cases are thus relevant only if they make the applicability of prior precedent unclear," *Boyd v. McNamara*, 74 F.4th 662, 669 (5th Cir. 2023) (citations omitted). That is, "[a] plaintiff need not show that the very action in question has previously been held unlawful. The test is whether every reasonable official would know that their actions are unconstitutional. [And, so, a]t the end of the day, [what is absolutely necessary] is fair warning." *Stevenson v. Tocé*, 113 F.4th 494, 504 (5th Cir. 2024) (cleaned up).

Under the second approach to demonstrating clearly established law, a plaintiff asks the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *D.C. v. Wesby*, 583 U.S. 48, 64 (2018)); *accord Batyukova*, 994 F.3d at 726.

"[I]n an obvious case, general standards can [therefore] 'clearly establish' the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

But "[t]he standard for obviousness is sky high." *Joseph*, 981 F.3d at 338.

And, so, "plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious,'" *Cope*, 3 F.4th at 206 (quoting *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (per curiam)), because qualified immunity should "not immunize those officials who commit novel, but patently 'obvious,' violations of the Constitution," *Tyson v. Sabine*, 42 F.4th 508, 520 (5th Cir. 2022) (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002)); *see, e.g.*, *Harris*, 47 F.4th at 279 ("Detaining Harris for more than six years after he should have been released under Supreme Court precedent and a state court order is a violation of clearly established law. Qualified immunity thus does not protect Huffman and Scott."); *Tyson*, 42 F.3d at 520 ("It is obvious that the right to bodily integrity forbids a law enforcement officer from sexually abusing a person by coercing them to perform nonconsensual physical sex acts for his enjoyment").

Here, even if the Court were to find that Tamborello has alleged plausible violations of the Constitution, he fails to address qualified immunity's clearly established prong, either by alleging facts that could show an obvious violation or by identifying a case with facts analogous to those alleged here. And, so, for that reason alone, he has not demonstrated that a defendant is not entitled to qualified immunity.

**V.    The Court should dismiss any claim under 18 U.S.C. § 242 because that federal criminal statute does not afford a private right of action.**

Tamborello injects into the complaint a reference to 18 U.S.C. § 242. *See* Dkt. No. 3 at 11. But Section 242, a provision of the federal criminal code, does "not afford [him] a private right of action." *Tucker v. U.S. Court of Appeals for Tenth Circuit*, 815 F. App'x 292, 294 (10th Cir. 2020); *see also Ennis Transp. Co. Inc. v. Richter*, No. 3:08-

cv-2206-B, 2009 WL 464979, at *1 (N.D. Tex. Feb. 24, 2009) ("It is well established that generally there is no private cause of action for the violation of a federal criminal statute, and thus no jurisdiction for federal courts to preside over a suit between private parties when the only federal law allegedly violated is criminal. In rare circumstances, however, where a criminal statute has 'a statutory basis for inferring' the existence of a civil action, violation of a criminal statute may give rise to a private cause of action." (citations omitted)). So, the Court must dismiss any claim under Section 242 – or any other federal criminal statute – where Tamborello fails to allege a private right of action.

## VI.    The Court should dismiss the state law claims under the TTCA.

Tamborello also brings intentional tort claims under Texas law – defamation and fraud and, possibly, "abuse of power."

The TTCA "provides a limited waiver of immunity for certain tort claims against the government." *Benfer v. City of Baytown, Tex.*, 120 F.4th 1272, 1284 (5th Cir. 2024) (quoting *Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 354 (Tex. 2013)).

But the TTCA "render[s] municipalities within Texas immune from liability for all intentional torts," *Johnson v. City of Dall., Tex.*, No. 3:99-cv-2153-D, 2001 WL 332021, *3 (N.D. Tex. Apr. 3, 2001), as the "TTCA's limited waiver of sovereign immunity does not apply to [an] intentional tort," *Mathis v. City of Dall.*, No. 3:20-cv-655-M-BH, 2020 WL 8172748, at *4 (N.D. Tex. Dec. 30, 2020), *rec. accepted*, 2021 WL 135990 (N.D. Tex. Jan. 14, 2021); *see also Webb v. City of Dall., Tex.*, 314 F.3d 787, 792 (5th Cir. 2002) ("[U]nder Texas law, a suit against a municipality or its agencies

arising out of the performance of its governmental duties … is deemed to be a suit against the State of Texas for purposes of state sovereign immunity unless some special exception applies." (footnote omitted)); *St. Marion Props., L.L.C. v. City of Hous.*, 78 F.4th 754, 764 (5th Cir. 2023) ("'In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity.' And 'a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.'" (quoting *DART v. Whitley*, 104 S.W.3d 540, 541 (Tex. 2003), then Tex. Gov't Code § 311.034)).

And, "if a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 462-63 (5th Cir. 2010) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008)); *accord Quinn v. Guerrero*, 863 F.3d 353, 362 (5th Cir. 2017).

Under this authority, HP moves to dismiss the state law claims against the individual defendants. *See* Dkt. No. 7 at 13-14. And, so, those claims should be dismissed with prejudice. *See, e.g.*, *Kelley v. City of Dall.*, No. 3:17-cv-1015-B-BK, 2017 WL 3891680, at *7 (N.D. Tex. Aug. 17, 2017) ("In the present case, Plaintiffs chose to file state law tort claims against both the City and the Individual Defendants arising out of the same subject matter. As such, the Individual Defendants are entitled to immediate dismissal of the claims against them with prejudice." (citations

- 24 -

omitted)), *rec. accepted*, 2017 WL 3868257 (N.D. Tex. Sept. 5, 2017).

## Recommendation

The Court should grant the motion to dismiss and dismiss this lawsuit with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 20, 2025

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE